Lawrence S. Lustberg
John D. Haggerty
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102
(973) 596-4500
llustberg@gibbonslaw.com
jhaggerty@gibbonslaw.com

Rachel Rodman (admitted *pro hac vice*)
**CADWALADER WICKERSHAM & TAFT LLP**
700 Sixth Street, NW
Washington, DC 20001
(202) 862-2210
rachel.rodman@cwt.com

*Attorneys for Plaintiff New Jersey Bankers Association*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY BANKERS ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey,<br><br>Defendant. | Civil Action No. 18-15725 (ZNQ) (DEA)<br><br><br>***Document electronically filed*** |

## PLAINTIFF NEW JERSEY BANKERS ASSOCIATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEY'S FEES PURSUANT TO 42 U.S.C. § 1988

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................1

BACKGROUND .......................................................................................1

LEGAL STANDARD.................................................................................10

ARGUMENT ...........................................................................................12

    I.     NJBA Is The Prevailing Party in This Civil Rights Action. ...............12

    II.    NJBA is Entitled to $1,761,035.50 in Fees........................................16

    III.   NJBA Incurred Reasonable Costs Litigating This Case. ...................30

CONCLUSION .........................................................................................32

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page**

*Abrams v. Lightolier Inc.*,
    50 F.3d 1204 (3d Cir. 1995) ........................................................................31

*Allegheny Cnty. Jail v. Pierce*,
    716 F.2d 177 (3d Cir. 1983) .................................................................15, 16

*Allen v. Hous. Auth. of Chester Cnty.*,
    563 F. Supp. 108 (E.D. Pa. 1983).................................................15, 30, 31

*Ams. for Prosperity v. Grewal*,
    No. 3:19-cv-14228-BRM-LHG, 2021 WL 1153194 (D.N.J. Mar. 26,
    2021) .........................................................................................11, 12, 17, 24

*Apple Corps. Ltd. v. Int'l Collectors Soc'y*,
    25 F. Supp. 2d 480 (D.N.J. 1998)................................................................31

*Associated Builders & Contractors of La., Inc. v. The Orleans Par. Sch. Bd.*,
    919 F.2d 374 (5th Cir. 1990) ........................................................................30

*Blum v. Witco Chemical Corp.*,
    888 F.2d 975 (3d Cir. 1989) ........................................................................18

*Broadrick v. Oklahoma*,
    413 U.S. 601 (1973)........................................................................................9

*Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health & Human
Res.*,
    532 U.S. 598 (2001)................................................................................13, 14

*Butler v. Frett*,
    No. 99-4367 (RBK), 2006 WL 1806412 (D.N.J. June 29, 2006) .....28, 30, 31

*Citizens United v. FEC*,
    558 U.S. 310 (2010)...........................................................................3, 25, 26

*DirecTV, Inc. v. Clark*,
    No. CIV. 03-2477(JBS), 2007 WL 2212608 (D.N.J. July 27, 2007)............21

# TABLE OF AUTHORITIES (cont.)

**Cases**                                                                                  **Page**

*Doe v. Ward*,
    282 F. Supp. 2d 323 (W.D. Pa. 2003) ....................................................22, 23

*Elrod v. Burns*,
    427 U.S. 347 (1976)...............................................................................26

*Exeter-W. Greenwich Reg'l Sch. Dist. v. Pontarelli*,
    88 F.2d 47 (1st Cir. 1986).............................................................15

*FEC v. Beaumont*,
    539 U.S. 146 (2003)............................................................................6, 7

*First Nat. Bank of Boston v. Bellotti*,
    435 U.S. 765 (1978)...............................................................................25

*Free Speech Coal., Inc. v. Att'y Gen. of U.S.*,
    677 F.3d 519 (3d Cir. 2012) .............................................................9

*Fross v. County of Allegheny*,
    848 F. Supp. 2d 547 (W.D. Pa. 2012) ...............................................15, 16, 29

*Gates v. Collier*,
    616 F.2d 1268 (5th Cir. 1980) .......................................................11

*Gierlinger v. Gleason*,
    160 F.3d 858 (2d Cir. 1998) .........................................................18

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...........................................................................*passim*

*Howley v. Mellon Fin. Corp.*,
    No. CIV. 06-5992 FSH, 2011 WL 2600664 (D.N.J. June 27, 2011)............21

*Hughes v. Repko*,
    578 F.2d 483 (3d Cir. 1978) .............................................................21, 24, 26

## TABLE OF AUTHORITIES (cont.)

**Cases**                                                                     **Page**

*Institutionalized Juveniles v. Sec'y of Pub. Welfare*,
    758 F.2d 897 (3d Cir. 1985) ..........................................................11

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
    426 F.3d 694 (3d Cir. 2005), *as amended* (Nov. 10, 2005) ..........................17

*Jama v. Esmor Corr. Servs., Inc.*,
    577 F.3d 169 (3d Cir. 2009) ..........................................................12

*J.O. ex rel C.O. v. Orange Twp. Bd. of Educ.*,
    287 F.3d 267 (3d Cir. 2002) ......................................................12, 13

*Keenan v. City of Philadelphia*,
    983 F.2d 459 (3d Cir. 1992) ..........................................................19

*League of Residential Neighborhood Advocs. v. City of Los Angeles*,
    633 F. Supp. 2d 1119 (C.D. Cal. 2009) ................................................31

*Lefemine v. Wideman*,
    568 U.S. 1 (2012)....................................................................13

*Legal Def. Grp. v. Adams*,
    436 F. Supp. 891 (D. Or. 1977) ......................................................32

*Loughner v. Univ. of Pittsburgh*,
    260 F.3d 173 (3d Cir. 2001) ......................................................12, 13

*Mid-Hudson Legal Servs., Inc. v. G & U, Inc.*,
    578 F.2d 34 (2d Cir. 1978) ......................................................11, 12

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)..................................................................18

*Pack v. Beyer*,
    No. CIV. A. 91-3709(AET), 1995 WL 775360 (D.N.J. Dec. 22, 1995).......23

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986)..................................................................12

# TABLE OF AUTHORITIES (cont.)

**Cases**                                                                                                    **Page**

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
    483 U.S. 711 (1987)..................................................................................12

*People Against Police Violence v. City of Pittsburgh*,
    520 F.3d 226 (3d Cir. 2008) .......................................................................14

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010)............................................................................10, 26

*Planned Parenthood of Cent. N.J. v. Att'y Gen. of State of N.J.*,
    297 F.3d 253 (3d Cir. 2002) .......................................................................31

*Prandini v. Nat'l Tea Co.*,
    585 F.2d 47 (3d Cir. 1978) .........................................................................18

*Project Vote/Voting for Am., Inc. v. Dickerson*,
    444 F. App'x 660 (4th Cir. 2011)................................................................27

*Public Int. Group of N.J. v. Windall*,
    51 F.3d 1179 (3d Cir. 1995) .......................................................................17

*Raab v. City of Ocean City, N.J.*,
    833 F.3d 286 (3d Cir. 2016) .......................................................................13

*Raab v. City of Ocean City*, No. CV 11-6818 (RBK/KMW), 2017 WL 2779753
(D.N.J. June 26, 2017)....................................................................................31

*Red Lion Broad. Co. v. F.C.C.*,
    395 U.S. 367 (1969)............................................................................26, 27

*Rode v. Dellarciprete*,
    892 F.2d 1177 (3d Cir. 1990) ...............................................................16, 21

*Rogers Grp., Inc. v. City of Fayetteville, Ark.*,
    683 F.3d 903, 907 (8th Cir. 2012)..............................................................30

*Singleton v. Wulff*,
    428 U.S. 106 (1976)....................................................................................10

## TABLE OF AUTHORITIES (cont.)

**Cases**                                                                                 **Page**

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)..................................................................................8

*United States v. Mendoza*,
    464 U.S. 154 (1984)....................................................................................14

*Ward v. Phila. Parking Auth.*,
    634 F. App'x 901 (3d Cir. 2015)................................................................11

**Statutes**                                                                              **Page**

42 U.S.C. § 1983...........................................................................................*passim*

42 U.S.C. § 1988...........................................................................................*passim*

N.J.S.A. 19:34-1.....................................................................................................2

N.J.S.A. 19:34-45.........................................................................................*passim*

N.J.S.A. 2C:43-3(b)(1).........................................................................................2

N.J.S.A. 2C:43-6(a)(3)..........................................................................................2

## PRELIMINARY STATEMENT

On September 28, 2022, the United States Court of Appeals for the Third Circuit brought to a close four years of litigation over New Jersey's 100-year old ban on political spending by banks. In the end, Plaintiff New Jersey Bankers Association achieved a significant victory: NJBA is now permitted to exercise its fundamental First Amendment right to participate in the democratic process by making independent expenditures and political contributions in New Jersey elections. That, as the Third Circuit put it, is "complete relief" for NJBA. As prevailing parties in this ligation, NJBA now requests, pursuant to 42 U.S.C. § 1988 (hereinafter § 1988), an award of $1,761,035.50, representing the reasonable amount of fees incurred during the course of litigation for 3,506.24 hours of attorney time and 147.70 hours of support staff time at rates previously deemed reasonable by the Honorable Brian R. Martinotti in a similar matter; it also seeks reimbursement for $68,110.87 in out-of-pocket expenses. NJBA's request for fees and costs is reasonable and thus fully warranted.

## BACKGROUND

### A.    The Statutory Scheme.

The First Amendment to the United States Constitution protects the fundamental right to participate in elections through political spending. Since 1911,

New Jersey has prohibited corporations in certain regulated industries from exercising that right. Under New Jersey's ban:

> No corporation carrying on the business of a bank, savings bank, cooperative bank, trust, trustee, savings indemnity, safe deposit, insurance, railroad, street railway, telephone, telegraph, gas, electric light, heat or power, canal or aqueduct company, or having the right to condemn land, or to exercise franchises in public ways granted by the state or any county or municipality, and no corporation, person, trustee or trustees, owning or holding the majority of stock in any such corporation, shall pay or contribute money or thing of value in order to aid or promote the nomination or election of any person, or in order to aid or promote the interests, success or defeat of any political party.

N.J.S.A. 19:34-45 (hereinafter "§ 19:34-45").

§ 19:34-45 is a criminal statute enforced by the Attorney General. N.J.S.A. 19:34-1; *see also* N.J.S.A. 2C:43-3(b)(1); N.J.S.A. 2C:43-6(a)(3) (imposing maximum fine of $15,000 and three to five years in prison). On its face, the law prohibits banks from spending any money or thing of value to aid or promote a New Jersey political candidate or party. The Attorney General interprets the ban expansively. In 2002, the Attorney General advised New Jersey's Election Law Enforcement Commission that § 19:34-45 applies to banking industry trade associations. *See* ECF No. 82-12 (Letter from David Samson, N.J. Atty. Gen., to Frederick M. Herrman, Exec. Dir., Election Law Enforcement Comm'n (Mar. 14,

2002)). The Attorney General has maintained that position throughout this litigation. *See* CA3 ECF Nos. 52, 59.[1]

### B.    Procedural History.

#### 1.    Litigation in Trial Court (2018-2020).

NJBA is a nonprofit member-funded trade association representing banks headquartered in or with branches in New Jersey. CA3 Op., ECF No. 116-2 at 4. NJBA wished to engage in political spending, but it faced a "substantial threat of future enforcement" by the Attorney General under § 19:34-45. *Id.* at 10 (internal quotation marks omitted). Thus, on November 6, 2018, NJBA filed this lawsuit under 42 U.S.C. § 1983 alleging that § 19:34-45 is facially unconstitutional under the First Amendment. *See* ECF No. 1. The complaint included two counts. Count 1 alleged that § 19:34-45's ban on independent expenditures violated the First Amendment rights of NJBA and its members under *Citizens United v. FEC*, 558 U.S. 310 (2010). *See id.*, ¶¶ 30–34, 51–56. Count 2 alleged that § 19:34-45's ban on political contributions violated the First Amendment rights of NJBA and its members because it was not narrowly tailored to address New Jersey's interest in preventing *quid pro quo* corruption. *See id.*, ¶¶ 35–50; 57–63.

---

[1] NJBA refers to docket entries for the appeal in this case, *New Jersey Bankers Association v. Attorney General of New Jersey*, 21-2352 (3d Cir) in the format "CA3 ECF No."

From the start, NJBA sought an expedited schedule that mirrored similar campaign finance challenges. To that end, NJBA made two proposals at the initial status conference on January 3, 2019: first, that the Attorney General entertain resolving Count 1 on terms that provided a court-enforceable prohibition on enforcing § 19:34-45 as to independent expenditures by NJBA and its members; and second, the entry of a scheduling order providing for limited discovery and expedited motions for summary judgment on Count 2. *See* ECF Nos. 11, 19. The Attorney General rejected both proposals. *See* ECF Nos. 19–35.

Specifically, on Count 1, NJBA offered to dismiss Count 1 if the Attorney General would covenant that "no action, civil, criminal or otherwise, in the name of the State will ever be brought to enforce N.J.S.A. 19:34-45 as to any independent expenditure made by Plaintiff or its members." ECF No. 35 at 2. After a settlement conference with the Court, *see* ECF No. 29, the Attorney General rejected NJBA's offer, *see* ECF No. 34.

On Count 2, the Attorney General argued that he should be permitted to file Rule 12(b) motions; should those motions fail, to develop "a full record . . . possibly resulting in a lengthy discovery process"; and once comprehensive discovery was closed, to move for summary judgment. ECF No. 34 at 4. After multiple rounds of briefing, the Court entered a case management order resolving the parties' dispute over dispositive motions and the scope of discovery. *See* ECF No. 36. The Court

ordered the Attorney General "to file a summary judgment motion as its responsive pleading" and NJBA to "oppose the motion, seek targeted discovery if necessary, and cross-move for summary judgment." ECF No. 36.

Still, the Attorney General objected to the case management order and continued to press for extensive discovery. *See* ECF No. 38. Yet the only discovery the Attorney General identified at that time were subpoenas to NJBA's member banks asking about their involvement in *quid pro quo* corruption—*i.e.,* criminal bribery. In particular, the Attorney General proposed to subpoena eight third-party banks for (1) all documents relating to publicly filed criminal or civil cases involving the bank, its officers, or directors, and (2) all documents relating to any investigation, regulatory enforcement action, and/or criminal action involving the bank, its officers, or directors. *See* ECF No. 59 at 5–8.

NJBA promptly moved for a protective order. *See* ECF No. 44. Another round of extensive briefing and two hearings before the Honorable Douglas E. Arpert, United States Magistrate Judge, followed. *See* ECF Nos. 44–65. Judge Arpert rejected the Attorney General's request for third-party discovery of banks. *See* ECF No. 66. The Court did, however, permit the Attorney General to serve discovery on NJBA. In the end, NJBA answered interrogatories, responded to requests for admission, and produced over 18,000 pages of documents. Rodman Decl. ¶ 13.

After months of discovery, the Attorney General moved for summary judgment in August 2020. *See* ECF Nos. 81, 83. NJBA opposed that motion and cross-moved for summary judgment. *See* ECF Nos. 82, 92. The parties' summary-judgment briefing addressed issues of first impression: no court had previously construed § 19:34-45 or addressed its constitutionality. Rodman Decl. ¶ 14. As NJBA had predicted during the parties' discovery dispute, *see* ECF 44-1 at 15, 19–22, the Attorney General's motion focused on legal arguments supported by publicly-available records, not evidence collected from NJBA in discovery. *See* ECF 81-3–81-30 (submitting two documents produced by NJBA in support of summary judgment motion). On Count 1, the Attorney General argued that § 19:34-45 did not apply to independent expenditures as a matter of law. *See* ECF No. 81-1 at 16–24. NJBA argued that the ordinary meaning of the Legislature's words in the statute—to "pay" or "contribute" "money" or "thing[s] of value"—covered conduct that we today call independent expenditures. ECF No. 82-1 at 13–20.

On Count 2, the Attorney General argued that § 19:34-45 was supported by New Jersey's interest in preventing *quid pro quo* corruption. ECF No. 81-1 at 26–30. He also argued that, under the Supreme Court's holding in *FEC v. Beaumont*, 539 U.S. 146 (2003), § 19:34-45 was narrowly tailored to serve that interest as a matter of law. *Id.* at 35–36. NJBA argued that § 19:34–45 did not serve an important state interest because it was enacted to curtail corporate influence, not to combat the

specific problem of *quid pro quo* corruption. ECF No. 82-1 at 20–32. NJBA also argued that *Beaumont*—which upheld the federal corporate contributions ban—did not relieve the Attorney General of his burden to show a narrowly-tailed statute. *Id.* at 32–40. *See also Beaumont*, 539 U.S. at 162–63.

The Court convened oral argument on the parties' motions for summary judgment. ECF No. 97. On June 21, 2021, the Honorable Brian R. Martinotti issued a 48-page Opinion and Order. ECF Nos. 99, 100. The Court granted summary judgment to NJBA on Count 1, holding that § 19:34-45 prohibits independent expenditures by banks and therefore violates the First Amendment. ECF No. 99 at 18. The Court granted summary judgment to the Attorney General on Count 2, holding that New Jersey's ban on political contributions by banks was closely drawn to serve New Jersey's important state interest in preventing *quid pro quo* corruption. *Id.* at 47.

## 2.    Litigation in the Third Circuit (2020-2022).

Both parties appealed the district court's June 21, 2021 Order. NJBA appealed the Court's ruling denying summary judgment on Count 2. The Attorney General cross-appealed the Court's ruling denying summary judgment on Count 1. ECF No. 107.

Briefing was extensive, and the Third Circuit scheduled oral argument. *See* CA3 ECF No. 49. Several weeks prior to oral argument, the Third Circuit requested supplemental briefing on two questions:

1.  What is the significance of the New Jersey Attorney General's March 14, 2002 Opinion on this Court's interpretation of N.J.S.A. § 19:34-45, including whether the Association is a "corporation carrying on the business of a bank"?

2.  If the Association is not a "corporation carrying on the business of a bank" under N.J.S.A § 19:34-45, what facts show that the Association directly suffered "an injury in fact that is concrete, particularized, and actual or imminent . . . likely caused by the defendant . . . and would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)?

CA3 ECF No. 47.

At oral argument in July 2022, the panel focused almost exclusively on questions of statutory construction and standing. Rodman Decl. ¶ 18. And the day after oral argument, the Third Circuit requested a second supplemental brief on the precise question of "[w]hether New Jersey Banks Association is a 'corporation carrying on the business of a bank' under N.J.S.A. § 19:34-45." CA3 ECF No. 57.

The Third Circuit issued its Opinion and Judgment on September 28, 2022. *See* ECF No. 116. The Court based its ruling on the principle of constitutional avoidance: "[p]ursuant to well-established constitutional avoidance principles, the threshold question is a statutory one: whether § 19:34-45 applies to NJBA at all."

CA3 Op., ECF No. 116-2 at 11. Treating the "plain meaning" of the statute "as conclusive," the Court ruled that it does not. *Id.* at 13. Thus, the Court held:

> Because we can resolve the case on statutory grounds—namely, by interpreting the statute as inapplicable to trade associations of banks—we decline to reach the First Amendment issues. ***In doing so, we nonetheless provide complete relief***. NJBA seeks to make independent expenditures and contributions; based on our reading of § 19:34-45, it may do so.

*Id.* at 16 (emphasis added).

While the Third Circuit emphasized that it had "provid[ed] all the relief to which ***NJBA*** is entitled," it acknowledged that its statutory construction ruling did not resolve the case. *Id.* (emphasis added). On top of NJBA's First Amendment injury, NJBA had brought a facial challenge alleging that § 19:34-45 also infringes the First Amendment rights of third-party banks. *See* ECF No. 1 ¶¶ 51–63.

To address that claim, the Third Circuit applied the First Amendment overbreadth doctrine. CA3 Op., ECF No. 116-2 at 17. Under that framework, "a party may bring a facial challenge against a statute, even though it is not unconstitutional as applied to that particular party, because 'the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 537 (3d Cir. 2012) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 612 (1973)). The overbreadth doctrine is thus an exception to the ordinary rule of

prudential standing that "one may not claim standing . . . to vindicate the constitutional rights of some third party." CA3 Op., ECF No. 116-2 at 17 (quoting *Singleton v. Wulff*, 428 U.S. 106, 114 (1976)). The Third Circuit, however, held that NJBA did not qualify for the exception because the complaint had failed to allege that "any of its members will sustain a First Amendment injury." *Id.* at 19. Thus, the Court of Appeals held that "NJBA cannot bring a facial challenge [on] behalf of third-party banks." *Id.*

In the Judgment accompanying the Opinion, the Third Circuit reversed the judgment of the district court and ordered the district court to dismiss NJBA's claims without prejudice. ECF No. 116-1. The Court, in its Judgment, also ordered the Attorney General to pay NJBA's costs.[2] *Id.*

## LEGAL STANDARD

"Congress enacted 42 U.S.C. § 1988 in order to ensure that federal rights are adequately enforced." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). Under § 1988, attorneys who work to remedy civil rights violations are entitled to

---

[2] After the Third Circuit's decision, NJBA filed a motion to amend the Third Circuit's judgment. CA3 ECF No. 62. In NJBA's view, the judgment did not reflect the "complete relief" the Court had provided in its Opinion. The Court of Appeals denied NJBA's request. CA3 ECF No. 67. NJBA and the Attorney General also submitted competing proposed orders to implement the Third Circuit's mandate. *See* ECF Nos. 119, 120. The district court adopted NJBA's proposed order, but it did not agree to NJBA's request to include declaratory and injunctive relief in that order. *See* ECF No. 121. NJBA is not seeking fees or costs in connection with this post-judgment litigation.

"receive reasonable compensation for their services." *Mid-Hudson Legal Servs., Inc. v. G & U, Inc.*, 578 F.2d 34, 37 (2d Cir. 1978). The statute thus permits the "prevailing party" in "any action or proceeding" under 42 U.S.C. § 1983 to recover "reasonable attorney's fees." 42 U.S.C. § 1988(b); *see also Ams. for Prosperity v. Grewal*, No. 3:19-cv-14228-BRM-LHG, 2021 WL 1153194, at *1 (D.N.J. Mar. 26, 2021).

The federal policy in favor of attorney's fees requires courts to give a "'generous formulation' to the term 'prevailing party.'" *Ward v. Phila. Parking Auth.*, 634 F. App'x 901, 903 (3d Cir. 2015) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Recognizing Congress' clear signals to apply [§ 1988] 'broadly to achieve its remedial purpose,' courts have taken an extremely liberal view on nearly every interpretative question that has arisen thus far under [§ 1988]." *Gates v. Collier*, 616 F.2d 1268, 1275 (5th Cir. 1980) (quoting *Mid-Hudson Legal Servs., Inc.*, 578 F.2d at 37).

Thus, plaintiffs "prevail" under § 1988 when "they succeed on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." *J.O. ex rel C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002) (quoting *Hensley*, 461 U.S. at 433). "The focus of this analysis is on the relief actually obtained rather than on the success of the legal theories." *Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 911 (3d Cir. 1985) (citations

11

omitted); *see also Jama v. Esmor Corr. Servs., Inc.*, 577 F.3d 169, 177 (3d Cir. 2009) (emphasizing that § 1988 "does not refer to 'claims,' but instead provides that fees may be awarded, '[i]n any *action* or *proceeding* to enforce'" a plaintiff's constitutional rights.") (quoting 42 U.S.C. § 1988) (emphasis in original).

Prevailing parties are entitled to "reasonable attorney's fees." 42 U.S.C. § 1988(b). The first step in determining a reasonable fee is to calculate the lodestar by multiplying the number of hours spent in litigation by a reasonable hourly rate. *Ams. for Prosperity*, 2021 WL 1153194, at *2 (citations and quotations omitted). There is a "strong presumption" that the lodestar is reasonable. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987).

## ARGUMENT

### I.    NJBA Is The Prevailing Party in This Civil Rights Action.

NJBA prevailed on a significant issue, achieving a central benefit that NJBA sought in bringing this lawsuit: the freedom to make independent expenditures and political contributions in New Jersey elections. *See J.O.*, 287 F.3d at 271. For that reason, NJBA is the prevailing party under § 1988.

To determine whether a plaintiff is the prevailing party under that statute, courts examine whether (1) a plaintiff achieved "a 'material alteration of the legal relationship of the parties,'" and (2) "that material alteration is 'judicially

12

sanctioned.'" *Raab v. City of Ocean City*, 833 F.3d 286, 292 (3d Cir. 2016) (quoting *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604–05 (2001)). A "material alteration" occurs when a plaintiff achieves "actual relief on the merits" that "modif[ies] the defendant's behavior in a way that directly benefits the plaintiff." *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012). And such a "material alteration" is "judicially sanctioned" when the "change is enforceable or 'judicially sanctioned' by the court." *Raab*, 833 F.3d at 293 (quoting *Buckhannon*, 532 U.S. at 604–05). In other words, an alteration with a "judicial ***imprimatur***" is judicially sanctioned, while a defendant's "voluntary change in conduct" is not. *Buckhannon*, 532 U.S. at 605  (emphasis in original). NJBA satisfies both elements.

*First*, the Third Circuit's ruling materially changed the relationship between the Attorney General and NJBA. Before the Third Circuit's ruling, NJBA "face[d] a 'substantial' 'threat of future enforcement' under §19:34-45." CA3 Op., ECF No. 116-2 at 10. For decades, the Attorney General interpreted § 19:34-45 to apply to banking trade associations like NJBA. *See* ECF No. 82-12. The Attorney General did not change his position after NJBA filed this lawsuit. And when given the opportunity (twice) by the Third Circuit to address the statute's scope, the Attorney General asserted that he could enforce § 19:34-45 against NJBA. *See* CA3 ECF. No. 52 at 3; CA3 ECF No. 59 at 1–2.

13

The Third Circuit rejected that position, holding that § 19:34-45 is "inapplicable to trade associations of banks." CA3 Op., ECF No. 116-2 at 16. The Court emphasized that its ruling "provide[d] complete relief" to NJBA: "NJBA seeks to make independent expenditures and contributions; based on our reading of § 19:34-45, it may do so." *Id.* The Third Circuit's ruling thus bars any future action by the Attorney General to enforce § 19:34-45 against NJBA. *See, e.g., United States v. Mendoza*, 464 U.S. 154, 158 (1984) ("[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation."). As a result, there is little doubt that it works a material change in the legal relationship between NJBA and the Attorney General. *See People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 234 (3d Cir. 2008) (holding that plaintiffs who successfully challenged the enforcement of a city ordinance under the First Amendment "altered the legal relationship among the parties[.]").

*Second*, NJBA's relief was judicially sanctioned. The Attorney General disputed the statutory interpretation adopted by the Third Circuit at every stage of this case. It is the Third Circuit's ruling, in a precedential opinion, that permits NJBA to engage in political spending——not a voluntary about-face by the Attorney General. *See Buckhannon*, 532 U.S. at 600 (holding that a "voluntary change in the defendant's conduct" lacks judicial sanction).

One final point: the Attorney General has stressed that the Third Circuit's statutory construction ruling "fully remedie[d]" NJBA's First Amendment injury. CA3 ECF No. 59 at 2. *See also* CA3 ECF No. 65 at 3–4 ("[T]he Court's opinion gave NJBA 'complete relief' by holding in its published opinion that the Association is free to make the contributions and expenditures it wishes."). The Third Circuit also awarded NJBA costs. ECF No. 116-1. The Court's decision to award that relief on statutory-construction-grounds rather than constitutional grounds does not defeat NJBA's prevailing party status. *See Exeter-W. Greenwich Reg'l Sch. Dist. v. Pontarelli*, 788 F.2d 47, 49–51 (1st Cir. 1986) (holding that a plaintiff achieved a benefit sought in his § 1983 litigation where the state court, on a certified question issued *sua sponte* by the district court, interpreted the a state statute not to cause the alleged constitutional violation). And courts routinely find that plaintiffs are prevailing parties under § 1988 when they win based on the court's exercise of constitutional avoidance. *See, e.g.*, *Allen v. Hous. Auth. of Chester Cnty.*, 563 F. Supp. 108, 110 (E.D. Pa. 1983) (holding that the plaintiff who "prevailed on a state law issue" through the exercise of constitutional avoidance "is a prevailing party for purposes of Section 1988").

A decision out of the United States District Court for the Western District of Pennsylvania is instructive on this point. In *Fross v. County of Allegheny*, the plaintiff's challenge to a state statute was resolved purely on state law grounds when

the Pennsylvania Supreme Court, by way of answering a certified question, held that state law preempted the challenged statute. 848 F. Supp. 2d 547, 549–50, 552 (W.D. Pa. 2012). In the subsequent fee litigation, the court held that the plaintiff was a prevailing party, even though the plaintiff's federal constitutional and statutory challenges to the state statute "remain[ed] unadjudicated." *Id.* at 552–553.

## II.     NJBA Is Entitled To $1,761,035.50 in Fees.

As the prevailing party, NJBA is entitled to recover a reasonable fee. 42 U.S.C. § 1988(b). NJBA's fee request is based on the lodestar: multiplying the number of hours spent in litigation by a reasonable hourly rate. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). NJBA asks to be compensated at the exact same rates recently endorsed by Judge Martinotti in a comparable case. The time spent litigating NJBA's novel challenge to § 19:34-45 reflects its success: NJBA remedied a century-old restriction on political speech that harmed NJBA, its members, other banking trade associations, and the public. The time expended also accounts for the effort required by this litigation, the case's procedural and substantive complexities, and the Attorney General's litigation tactics, which added hundreds of avoidable hours.

### A.     NJBA Seeks Reimbursement at Reasonable Rates Approved in The District of New Jersey.

Prevailing parties may recover fees at a "reasonable hourly rate." *Hensley*, 461 U.S. at 433. "The starting point in ascertaining a reasonable hourly rate 'is the

attorney's usual billing rate, but this is not dispositive.'" *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) (quoting *Public Int. Group of N.J. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995)). Courts must then "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 708 (3d Cir. 2005), *as amended* (Nov. 10, 2005) (quoting *Loughner*, 260 F.3d at 180). The prevailing party bears the burden of establishing that the requested rates are reasonable. *Id.* (citation omitted).

Rather than using counsel's standard rates, NJBA seeks compensation at rates Judge Martinotti deemed reasonable in his recent decision in *Americans for Prosperity v. Grewal*. That case mirrors this action in four ways. The plaintiff there was a nonprofit alleging that a state statute violated the First Amendment. The plaintiff filed suit against the Attorney General in the District of New Jersey, where it was assigned to Judge Martinotti sitting in Trenton. The plaintiff was represented by out-of-state and local co-counsel. And, the plaintiff was the prevailing party. *See* 2021 WL 1153194 at *1–2.

Judge Martinotti started his analysis with the Community Legal Services of Philadelphia ("CLS") 2018 fees table, which he noted has been endorsed by other courts in the District. 2021 WL 1153194, at *14 (citations and quotations omitted).

He then applied "an upward adjustment of $50 an hour to the high end of the hourly rate allowed in the CLS fee schedule" because (1) "the hourly rate in southern New Jersey has been found lower than that in northern New Jersey" and (2) "the hourly rate in central New Jersey is in between the rates in northern and southern New Jersey." *Id.* at * 14. The resulting rates (the "*AFP* Rates") are set forth below:

| | Hours[3] | *AFP* Rates[4] | *AFP* Rates x Hours Total | Experience |
|---|---|---|---|---|
| **Attorneys** | | | | |
| **Cadwalader, Wickersham & Taft LLP** | | | | |
| Rachel Rodman (Partner) (includes CWT and W&C hours) | 1331.15 | $580.00 | $772,067.00 | 18 |
| Jonathan Watkins (Partner) | 116.00 | $580.00 | $67,280.00 | 18 |
| Wesley Wintermyer (Associate) | 421.10 | $410.00 | $172,651.00 | 9 |
| William Simpson (Associate) | 607.44 | $325.00 | $197,418.00 | 5 |
| **Gibbons P.C.** | | | | |

---

[3] The hours listed in this table do not include the hours spent preparing this fee application, even though NJBA is entitled to receive fees and costs for the time spent preparing this application. *See Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53–54 (3d Cir. 1978). NJBA will detail those costs and fees along with its reply brief.

[4] NJBA seeks to apply the *AFP* Rates based on each timekeeper's current experience. *See Keenan v. City of Philadelphia*, 983 F.2d 459, 476 (3d Cir. 1992) ("[I]n granting plaintiffs compensation for delay, two methods may be used: basing the fee award on current rates or adjusting the fee based on historical rates to reflect its present value." (citing *Blum v. Witco Chemical Corp.*, 888 F.2d 975, 984 (3d Cir. 1989))); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) ("[T]he rates used by the court to calculate the lodestar should be 'current rather than historic hourly rates.'" (quoting *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989))).

| | Hours[3] | *AFP* Rates[4] | *AFP* Rates x Hours Total | Experience |
|---|---|---|---|---|
| Lawrence S. Lustberg (Director) | 138.80 | $750.00 | $104,100.00 | 39 |
| John Haggerty (Director) | 233.20 | $500.00 | $116,600.00 | 11 |
| **Williams & Connolly LLP** | | | | |
| David Blatt (Partner) | 64.15 | $750.00 | $48,112.50 | 34 |
| Akhil Gola (Associate) | 449.45 | $410.00 | $184,274.50 | 6 |
| Moskowitz, Benjamin (Associate) | 144.95 | $410.00 | $59,429.50 | 4 |
| **Attorney Total** | **3506.24** | | **$1,721,932.50** | |
| **Non Attorney Support Staff** | | | | |
| **Cadwalader, Wickersham & Taft LLP** | | | | |
| Cynthia Ballard (Paralegal) | 30.30 | $250.00 | $7,575.00 | 21 |
| Matthew Penfield (Paralegal) | 72.60 | $280.00 | $20,328.00 | 16 |
| **Williams & Connolly LLP** | | | | |
| Elias Howard (Paralegal) | 44.80 | $250.00 | $11,200.00 | 3 |
| **Non Attorney Support Staff Total** | **147.70** | | **$39,103.00** | |
| **Total (Attorneys and Non Attorney Support Staff)** | **3653.94** | | **$1,761,035.50** | |

The *AFP* Rates will certainly reasonably compensate the skilled and experienced litigation counsel who regularly work for paying clients at substantially higher rates. Cadwalader, Wickersham & Taft LLP and Williams & Connolly LLP are consistently ranked among the most prestigious law firms in the country. *See* Firsthand, Vault Law 100, https://firsthand.co/best-companies-to-work-for/law/top-

19

100-law-firms-rankings (last visited Jan. 4, 2023). Rachel Rodman, formerly of Williams & Connolly, leads Cadwalader's Consumer Financial Services and Litigation group. Rodman Decl. ¶ 21. She has nearly twenty years of experience in financial services litigation, including five years of government service for the Consumer Financial Protection Bureau. *Id.* Ms. Rodman has significant experience in administrative law and procedure, constitutional litigation, and cases challenging the scope of government agency authority. *See* Rodman Decl. ¶ 21. The other partners at Cadwalader and Williams & Connolly who worked on this case also have substantial litigation experience, and associates at both firms previously held clerkships at federal district and/or appellate courts. Rodman Decl. ¶¶ 22–25.

Co-counsel Gibbons P.C., headquartered in Newark, New Jersey, contributed significantly on substantive and procedural matters. Lawrence S. Lustberg was, during the course of this matter, Co-Chair of Gibbons P.C.'s Commercial & Criminal Litigation Practice Group and Director of the John J. Gibbons Fellowship in Public Interest & Constitutional Law—which undertakes public interest and constitutional law projects and litigation, including many historic, cutting-edge civil rights and civil liberties cases. Lustberg Decl. ¶¶ 14–16. He has been practicing law for over 40 years and has worked on numerous civil rights cases and constitutional challenges during his career, including numerous matters involving election law and the First Amendment. Lustberg Decl. ¶¶ 15–16. John D. Haggerty, a former law

clerk to the Honorable Joel A. Pisano, is also a Director at Gibbons P.C. with significant experience in complex civil litigation at the trial and appellate levels. Lustberg Decl. ¶¶ 17–19.

### B. Counsel Spent Reasonable And Necessary Time Protecting NJBA's Right To Engage in Political Spending.

The hours spent litigating a civil rights case are deemed reasonable unless they are "excessive, redundant, or otherwise unnecessary." *See Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433). Courts consider several factors to determine reasonableness, including:

- **Degree of success.** *See Hensley*, 461 U.S. at 440 ("The extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under [Section] 1988.");

- **Complexity.** *See DirecTV, Inc. v. Clark*, No. CIV. 03-2477(JBS), 2007 WL 2212608, at *5 (D.N.J. July 27, 2007) ("[T]he number of hours expended by DirecTV in litigating this complex case over nearly three years were reasonable.");

- **Litigation tactics by the opposition.** *See Howley v. Mellon Fin. Corp.*, No. CIV. 06-5992 FSH, 2011 WL 2600664, at *6–7 (D.N.J. June 27, 2011) (considering opposing counsel's litigation tactics when examining hours spent in litigation); and

- **Policy factors.** *See Hughes v. Repko*, 578 F.2d 483, 492 n.5 (3d Cir. 1978) (Garth, J., concurring) (examining the right vindicated, furtherance of public interest, the number of citizens who benefit, and extent of the civil rights violation).

### 1. NJBA's Achieved an Important Victory.

NJBA brought this case to vindicate the rights of NJBA and its member banks to make contributions and independent expenditures in New Jersey elections. *See*

21

ECF No. 1. After four years of hard-fought litigation, the Third Circuit concluded that § 19:34-45 does not apply to banking trade associations. CA3 Op., ECF No. 116-2 at 16. The Third Circuit's ruling allows NJBA to participate in New Jersey elections for the first time in a century. *See id.* That ruling also expands the First Amendment rights of NJBA's member banks, though they were not parties here. NJBA is comprised of and funded by banks. Rodman Decl. 3. As a result of NJBA's efforts in this case, those banks can now engage in political spending through their participation in, and funding of, NJBA.

### 2. NJBA Advanced a Novel Challenge to § 19:34-45 And The Ensuing Litigation Was Substantively And Procedurally Complex.

NJBA is the first plaintiff to challenge § 19:34-45. The Supreme Court recognizes that "[c]omplex civil rights litigation involving numerous challenges to institutional practices or conditions . . . is lengthy and demands many hours of lawyers' services." *Hensley*, 461 U.S. at 436. Such is the case here. The issues of first impression, statutory interpretation, and standing that arose here required the substantial time commitment from senior lawyers that is, in fact, reflected in the hours spent. *See Doe v. Ward*, 282 F. Supp. 2d 323, 338 (W.D. Pa. 2003) (awarding full fees in a case that "was one of first impression and dealt with several complex legal issues." For example, counsel had to scour legal and historical authority to brief § 19:34-45's historical context, legislative history, and purpose dating back to its

1911 enactment. *See* ECF 82-1 at 10–12, 14–19. This work proved to be important: Judge Martinotti spent much of his forty-eight-page summary judgment opinion examining the text and history of § 19:34-45 as well as its historical context. *See, e.g.*, ECF No. 99 at 5–14; 19–31; *see also Doe*, 282 F. Supp. at 338 (citing "the court's thirty-nine page opinion" as evidence of complexity). Similarly, the Third Circuit's repeated calls for supplemental briefing—on nuanced issues such as the overbreadth doctrine and its relationship to third-party standing—and ultimate reversal of Judge Martinotti's decision (on grounds not raised in the district court) emphasize the layers of complexity here. *Pack v. Beyer*, No. CIV. A. 91-3709(AET), 1995 WL 775360, at *7 (D.N.J. Dec. 22, 1995) (concluding that fees were reasonable in part because counsel "competently addressed numerous and complex issues of law"). Finally, both courts' request for oral argument reflects the novel and challenging nature of the issues presented.

### 3. The Attorney General's Litigation Tactics Prolonged And Increased the Cost of This Litigation.

The Attorney General's aggressive litigation strategy also contributed significantly to the hours and costs spent litigating this case. For example, the Attorney General refused NJBA's offer to settle Count 1 without seeking attorney's fees if the Attorney General would agree to a permanent injunction prohibiting the Attorney General from enforcing § 19:34-45 against NJBA or its members for making independent expenditures. Rodman Decl. ¶ 12. That refusal was (and

remains) curious: the upshot of the Attorney General's legal position on Count 1 was that NJBA *could make* independent expenditures.

The Attorney General's discovery demands then needlessly inflated the time spent on litigation by hundreds of hours. *See* ECF Nos. 44, 59. *See also Ams. for Prosperity*, 2021 WL 1153194, at *8 (acknowledging that discovery requests and disputes may justify hours spent in litigation). As just one example, the Attorney General issued third-party subpoenas to eight of NJBA's member banks, which NJBA vigorously (and successfully) contested. Judge Arpert foreclosed this extraordinary third-party discovery of banks. *See* ECF No. 66. Contesting and complying with the Attorney General's discovery requests consumed more than 400 timekeeper hours, including 337 attorney hours, at a cost of more than $215,000 under the applicable rates. *See* Rodman Decl., Ex. 2 (Williams & Connolly time entries). As NJBA had predicted, *see* ECF NO. 44-1 at 15, 19–22, this burdensome and expensive process yielded just two documents in support of the Attorney General's summary judgment motion. *See* ECF Nos. 81-29, 81-30. Requiring NJBA to pay for the Attorney General's excessive discovery demands would deprive NJBA of "the opportunity," guaranteed by § 1988, "to recover what it costs [] to vindicate [its] rights in court." *Hughes*, 578 F.2d at 488–89 n.8.

Finally, NJBA was forced to litigate the Attorney General's cross appeal to the Third Circuit despite that appeal, even if successful, having no practical effect.

Judge Martinotti granted summary judgment to NJBA on Count 1, holding that §
19:34-45 prohibits independent expenditures and that this prohibition violates the
First Amendment, as it clearly does. *See* ECF No. 99 at 5–18. Judge Martinotti's
decision meant that NJBA and its member banks could make independent
expenditures. But the Attorney General appealed that decision, arguing that Judge
Martinotti erred because NJBA and its member banks were already free to make
independent expenditures because § 19:34-45 did not apply to independent
expenditures. CA3 ECF No. 29 at 52–62. The Attorney General would not, however,
agree to an enforceable court order that would bind the State to this position and
elimiate the threat of criminal prosecution. Thus, the Attorney General's position
forced NJBA to expend significant time and resources to in response.  This litigation
tactic, along with the others discussed above, account for hundreds of hours of
unnecessary work that could have been avoided.

### 4.    NJBA's Challenge to § 19:34-45 Served § 1988's Policy Goals.

Congress enacted § 1988(b) to "ensure that federal rights are adequately
enforced." *Perdue*, 559 U.S. at 550. NJBA's lawsuit served that goal. NJBA
successfully challenged a longstanding restriction on political speech, a cornerstone
of the First Amendment and "indispensable to decisionmaking in a democracy[.]"
*Citizens United*, 558 U.S. at 349 (quoting *First Nat. Bank of Boston v. Bellotti*, 435
U.S. 765, 777 (1978)). For more than 100 years, § 19:34-45 curtailed political speech

of banking trade associations by restricting political contributions and independent expenditures. The harm that has resulted is impossible to measure, as "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). By securing a ruling that narrowly interpreted § 19:34-45's, NJBA expanded political speech opportunities for all banking trade associations. Thus, NJBA's challenge to § 19:34-45 furthered the First Amendment's promise of "an uninhibited marketplace of ideas." *Red Lion Broad. Co. v. F.C.C.*, 395 U.S. 367, 390 (1969).

In addition, the benefits achieved in this litigation extend beyond NJBA to its members, industry peers, and the public. § 1988 is designed to reward plaintiffs who "vindicate our collective First Amendment rights." *Project Vote/Voting for Am., Inc. v. Dickerson*, 444 F. App'x 660, 664 (4th Cir. 2011). NJBA did just that. The Third Circuit's ruling permits banks to participate in New Jersey elections indirectly through NJBA. Because this ruling applies to all "trade associations of banks," CA3 Op., ECF No. 116-2 at 4, NJBA's peers that "[chose] simply to abstain from protected speech," *Citizens United*, 558 U.S. at 335–36 (citations and quotations omitted), can now support candidates in New Jersey elections through political spending. *See Hughes*, 578 F.2d at 492 n.5 (Garth, J., concurring) (instructing to consider expansion of others' rights through "stare decisis"). And by expanding the

ability of banking trade associations to speak, the Third Circuit's ruling advances the "right of the public to receive suitable access to social, political, esthetic, moral, and other ideas. . . ." *Red Lion Broad.*, 395 U.S. at 390. Because "this litigation served a clear public purpose" and not just NJBA's own private interests, NJBA should receive a full fee award. *Project Vote/Voting for Am.*, 444 F. App'x at 664.

### 5.    NJBA Has Voluntarily Reduced The Hours Requested.

The hours requested are also reasonable because counsel has exercised sound "billing judgment," *Hensley*, 461 U.S. at 434 (citations and quotations omitted), to exclude the hours worked by the following timekeepers who had nominal (under 30 hours) involvement in the case and/or have job titles that do not correspond with the *AFP* Fees Schedule:

- Cadwalader employees:   Law Clerk Paul Rodriguez; Researcher Jacqueline Henderson; Litigation Support staffer Elias Mantzopoulos; Paralegals Katherine Cassidy and Juliette Killough;

- Williams & Connolly employees: Associate Katherine M. Meeks; Law Clerk John B. Swanson; Cite Checker C.L. Burkhardt; Researchers Austin Kibler, C.S. Lietzan, and Matthew Foley; Paralegal Gerod Beulah; Litigation Support staffers Xiaoli Guli, Roger Faustin and Mohamed Elbarbary;[5] and

- Gibbons P.C. employees: Case Manager Fritz Sammy; and Paralegals Diane Whitford and Neal Mitchell.

---

[5] Excluding hours worked by Roger Faustin and Xiaoli Guli also accounts for the hours worked in July 2020 to assist Ms. Rodman in her transition from Williams & Connolly to Cadwalader. *See* Rodman Decl., Ex. 2.

Excluding the hours for these individuals reduces the fees requested by more than $50,000 when applying *AFP* Rates. And, as noted above, NJBA does not seek compensation for litigation related to the Third Circuit's judgment or this Court's implementation of the Third Circuit's mandate. *See* n.2, *supra*.

### 6.  NJBA Need Not Achieve a Complete Victory To Deserve a Full Fee Recovery.

NJBA acknowledges that it did not achieve all the relief it sought: while NJBA achieved "complete relief," it did not obtain that relief on constitutional grounds. Thus, NJBA's member banks are still subject to § 19:34-45's ban on political spending. When a prevailing party does not achieve a complete victory, a district court may, in its discretion, reduce the loadstar. *See Butler v. Frett*, No. 99-4367 (RBK), 2006 WL 1806412, at \*11 (D.N.J. June 29, 2006). For example, a court may reduce the lodestar for time spent on unsuccessful claims "that were distinct in all respects from claims on which the party did succeed." *Butler*, 2006 WL 1806412 at \*11. A court also may reduce the lodestar where the plaintiff achieves "limited" success. *Id.*

The success that NJBA did achieve in this litigation entitles NJBA to its requested fees. For over four years, NJBA has litigated a facial First Amendment challenge to § 19:34-45 against a well-resourced adversary—the State. The lawsuit was the first of its kind. In district court, NJBA secured a ruling on its First Amendment claims—succeeding on Count 1. *See* ECF No. 100. But on appeal, the

Third Circuit *sua sponte* invoked constitutional avoidance, raised a question of statutory construction, and provided NJBA complete relief on both Counts on non-constitutional grounds. As discussed *supra* at Sections II.B.1.4, that result is a significant victory for NJBA, its members, other banking trade associations, and for the spirit and purpose of the First Amendment. It does not reflect the kind of limited or nominal success for which courts reduce fee awards. *See, e.g., Velius v. Twp. of Hamilton*, No. CIV.A. 09-53 JEI/JS, 2012 WL 2397938, at *2 (D.N.J. June 22, 2012) (denying fee request where the plaintiff won a nominal $1 in damages).

That result is also inseparable from NJBA's pursuit of its underlying constitutional claims. Recognizing the nexus between constitutional and non-constitutional grounds for relief, courts routinely refuse to reduce fee awards because the plaintiff prevailed on non-constitutional grounds—including on grounds not pled in the complaint. *See, e.g., Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 683 F.3d 903, 907, 913 (8th Cir. 2012) (upholding full fee award where the district court never reached the plaintiff's constitutional claim); *Fross*, 848 F. Supp. 2d at 551–52, 556 (W.D. Pa. 2012) (finding "no basis on which to reduce the award of fees based on the success of this litigation" where plaintiff prevailed on a state-law issue addressed through constitutional avoidance); *League of Residential Neighborhood Advocs. v. City of Los Angeles*, 633 F. Supp. 2d 1119, 1132–33 (C.D. Cal. 2009) (finding "unpersuasive" the defendant's argument that the plaintiff achieved limited success

where the court exercised constitutional avoidance, and declining to reduce fee award for time spent litigating related but undecided claims); *Allen*, 563 F. Supp. at 110 (holding that plaintiff was prevailing party after exercising constitutional avoidance and awarding fees without reduction for partial success).

Any other outcome would frustrate the federal policy in favor of fee awards. *See Allen*, 563 F. Supp. at 110. That is, "[t]o deny such plaintiffs the attorneys' fees to which they might otherwise be entitled [but for a court's constitutional avoidance] frustrates rather than promotes the policy of [§ 1988(b)]." *Se. Legal Def. Grp. v. Adams*, 436 F. Supp. 891, 895 (D. Or. 1977).

## III.   NJBA Incurred Reasonable Costs Litigating This Case.

Under § 1988, Courts have "authority to award 'reasonable out-of-pocket expenses . . . normally charged to a fee-paying client, in the course of providing legal services.'" *Planned Parenthood of Cent. N.J. v. Att'y Gen. of State of N.J.*, 297 F.3d 253, 267 (3d Cir. 2002) (quoting *Associated Builders & Contractors of La., Inc. v. The Orleans Par. Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990)). "[T]he Third Circuit has recognized that 'reproduction expenses, telephone expenses of the attorney, travel time and expenses of the attorney, and postage' are generally recoverable under Section 1988." *Butler*, 2006 WL 1806412, at *12 (awarding mail, copy, and travel expenses (quoting A*brams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995))). Likewise, "online research charges are costs customarily billed separately

to clients" and are therefore recoverable. *Raab v. City of Ocean City*, No. CV 11-6818 (RBK/KMW), 2017 WL 2779753, at *7 (D.N.J. June 26, 2017) (awarding research costs (citing *Apple Corps. Ltd. v. Int'l Collectors Soc'y*, 25 F. Supp. 2d 480, 498 (D.N.J. 1998))).

| Cost Description | Amount |
|---|---|
| **Cadwalader, Wickersham & Taft LLP** | |
| Legal Research | $48,860.01 |
| Duplicating | $1,351.80 |
| Filing Fees | $228.00 |
| Transcripts | $618.95 |
| Travel Charges | $1,683.06 |
| **Cadwalader, Wickersham & Taft LLP Subtotal** | **$52,741.82** |
| **Gibbons P.C.** | |
| Legal Research | $84.00 |
| Filing Fees | $3,331.29 |
| Travel Charges | $183.61 |
| **Gibbons P.C. Subtotal** | **$3,598.90** |
| **Williams & Connolly LLP** | |
| Legal Research | $5,002.26 |
| Duplicating | $4,158.26 |
| Filing Fees | $470.26 |
| Transcripts | $178.35 |
| Travel Charges | $2,949.02 |
| **Williams & Connolly LLP Subtotal** | **$12,758.15** |
| **All Firm Subtotal** | **$69,098.87** |
| **Grand Total (Less $988.00)** | **$68,110.87** |

NJBA seeks $68,110.87 in costs. *See* Rodman Decl., Exhibits 1 and 2; Lustberg Decl. Ex. 2. As summarized in the table below, the costs requested are of the kind that courts have deemed to be compensable in the Third Circuit. These costs

are reasonable given the nature, complexity, and time required to litigate this case, as discussed above. The costs have been reduced by $988.00 to reflect the costs awarded pursuant to the Third Circuit's mandate. *See* ECF No. 121.

## CONCLUSION

For the reasons set forth above, this Court should find that NJBA prevailed and order the Attorney General to pay the $1,761,035.50 in fees and $68,110.87 in costs reasonably accrued.

Dated: January 13, 2023                    Respectfully Submitted,


                                           /s/ Lawrence S. Lustberg
                                           Lawrence S. Lustberg
                                           John D. Haggerty
                                           **GIBBONS P.C.**
                                           One Gateway Center
                                           Newark, N.J. 07102-05310
                                           (973) 596-4500

                                           Rachel Rodman (admitted *pro hac vice*)
                                           **CADWALADER WICKERSHAM &
                                           TAFT LLP**
                                           700 Sixth Street, NW
                                           Washington, DC 20001
                                           (202) 862-2210

                                           *Attorneys for Plaintiff New Jersey Bankers
                                           Association*