**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NEW JERSEY BANKERS ASSOCIATION,**<br><br>Plaintiff,<br><br>v.<br><br>**MATTHEW J. PLATKIN,** *in his official capacity as the Attorney General of the State of New Jersey,*<br><br>Defendant. | Civil Action No. 18-15725 (ZNQ) (DEA)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion for Attorney's Fees (the "Motion") filed by Plaintiff New Jersey Bankers Association ("Plaintiff" or "NJBA") pursuant to 42 U.S.C. § 1988. (ECF No. 124.) Plaintiff filed a memorandum in support of the Motion. ("Moving Br.", ECF No. 124-1.) Defendant Matthew J. Platkin, in his official capacity as the Attorney General of the State of New Jersey ("Defendant" or the "Attorney General"), opposed ("Opp'n Br.", ECF No. 130), and Plaintiff replied ("Reply Br.", ECF No. 133.)

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT the Motion.

1

I.     **BACKGROUND AND PROCEDURAL HISTORY**

N.J.S.A. § 19:34-45 ("§ 19:34-45") provides that, among other specified corporations, "[n]o corporations carrying on the business of a bank . . . shall pay or contribute money or thing of value in order to aid or promote the nomination or election of any person, or in order to aid or promote the interests, success or defeat of any political party." It is a criminal statute enforced by the Attorney General. N.J.S.A. § 19:34-1; *see also* N.J.S.A. 2C:43-3(b)(1); N.J.S.A. 2C:43-6(a)(3). Plaintiff alleged in its two-count Complaint that this statute improperly prohibited it, and its member banks, from making independent expenditures and contributions to political parties and campaigns. (*See* ECF No. 1.) Count 1 alleged that § 19:34-45 encompasses independent expenditures in violation of the First Amendment. (*Id.* ¶¶ 51–56.) Count 2 alleged that § 19:34-45's complete prohibition on contributions by certain corporations is unconstitutional because the statute is not closely drawn to serve the important state interest in combatting quid quo pro corruption or the appearance thereof. (*Id.* ¶¶ 57–63.)

Defendant filed a Motion for Summary Judgment on August 7, 2020 seeking judgment on both counts. (ECF No. 81.) Plaintiff responded with a Cross-Motion for Summary Judgment also seeking judgment on both Counts. (ECF No. 82.)

On June 21, 2021, the District Court granted summary judgment in favor of Plaintiff on Count 1, finding that § 19:34-45 prohibits independent expenditures in violation of the First Amendment. (ECF No. 99 at 18.) The District Court granted summary judgment in favor of Defendant as to Count 2, finding that § 19:34-45's ban on political contributions by certain corporations does not violate the First Amendment because it passed intermediate scrutiny. (*Id.* at

47.) Plaintiff appealed the grant of summary judgment as to Count 2 and Defendant cross appealed the grant of summary judgment as to Count 1.[1]  (ECF Nos. 107, 108.)

The Third Circuit declined to reach the First Amendment issues related to either Count. As to Count 1, it considered instead whether § 19:34-45 applied to NJBA at all.  (ECF No. 116-2 at 11.)  It concluded, after supplemental briefing from the parties, that NJBA was not bound by § 19:34-45 because NJBA did not qualify as a "corporation carrying on the business of a bank," and it reversed the District Court's decision on summary judgment.  (*Id.* at 11, 19.)  Notably, the Third Circuit's decision included the following language regarding its conclusion as to Count 1:

> Because we can resolve the case on statutory grounds—namely, by interpreting the statute as inapplicable to trade associations of banks—we decline to reach the First Amendment issues. In doing so, we nonetheless provide complete relief. NJBA seeks to make independent expenditures and contributions; based on our reading of § 19:34-45, it may do so.

(*Id.* at 16.)

As to Count 2, the Third Circuit concluded that NJBA lacked standing to bring a claim on behalf of its third-party member banks.  (*Id.* at 19.)  Accordingly, it also reversed the District Court's decision that granted summary judgment in favor of Defendant on Count 2.

The Third Circuit's mandate instructed the District Court to enter an order dismissing both of Plaintiff's claims without prejudice, and awarded appellate costs to NJBA.  (ECF No. 116.) After reviewing competing submissions from the parties, the District Court entered an Order implementing that mandate.  (ECF No. 121.)  Plaintiff thereafter filed the instant Motion for Attorney's Fees, seeking costs and fees incurred while litigating this suit in the District Court. (ECF No. 124.)

---

[1] On June 29, 2021, shortly after the Court decided the parties' motions for summary judgment, and just before the parties filed their competing appeals, this matter was reassigned to the undersigned.

## II.     JURISDICTION

The Court has original jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343.

## III.    LEGAL STANDARD

Under 42 U.S.C. § 1988(b), in proceedings involving the alleged violation of federal constitutional or civil rights, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *Hensley v. Eckerhart*, 461 U.S. 424, 426 (1986); *Raab v. City of Ocean City, N.J.*, 833 F.3d 286, 292 (3d Cir. 2016). Section 1988 applies to First Amendment claims. *Glass v. Snellbaker*, Civ. No. 05-1971, 2008 WL 4416450, at *2 (D.N.J. Sept. 23, 2008).

"The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989); *Unite Here, Loc. 54 v. City of Atl. City*, Civ. No. 11-6273, 2012 WL 1455249, at *3 (D.N.J. Apr. 26, 2012). This change must be "judicially sanctioned," insofar as the alteration in the parties' legal relationship must be the product of judicial action rather than voluntary. *See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001); *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 228 (3d Cir. 2011).

In general, a prevailing plaintiff under § 1988 should ordinarily be awarded attorney's fees, "unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429 (citations omitted). "[A] reasonable fee is one which is adequate to attract competent counsel, but which do[es] not produce windfalls to attorneys." *Scanno v. F.H. Cann & Assocs.*, 794 F. App'x 220, 222 n.7 (3d Cir. 2019) (citing *Pub. Interest Research Grp. of N.J., Inc. v. Widnall*, 51 F.3d 1179, 1185 (3d Cir. 1995)). "The most useful starting point for determining the amount of a reasonable fee . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 434. The resulting product of this calculation is

4

called the "lodestar." *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992) (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). "There is a 'strong' presumption that the lodestar is the 'reasonable' fee." *Id.* at 562 (citing *Del. Valley*, 478 U.S. at 565).

The party seeking an award of attorney's fees bears the burden of establishing the reasonableness of the hours spent and the rates charged. *Hensley*, 461 U.S. at 437. "The fee petition must be 'specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed.'" *Abdi Jama v. Esmor Corr. Servs.*, 549 F. Supp. 2d 602, 611 (D.N.J. 2008) (citing *Washington v. Philadelphia Cnty Ct. of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996)). Once the applicant produces satisfactory evidence, the burden shifts to "the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended." *Apple Corps. v. Int'l Collectors Soc'y*, 25 F. Supp. 2d 480, 485 (D.N.J. 1998) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

In addition to the lodestar figure, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434. However, a district court cannot "decrease a fee award based on factors not raised at all by the adverse party." *Rode*, 892 F.2d at 1183 (citing *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)). Further, a district court "may not set attorney's fees based on a generalized sense of what is usual and proper but must rely upon the record." *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997) (citations omitted).

## IV.  DISCUSSION

### A.  Prevailing Party

The Court first considers whether Plaintiff is a "prevailing party." On this point, Plaintiff argues that it prevailed on a significant issue—namely, it won its freedom to make independent

expenditures and political contributions in New Jersey elections. (Moving Br. at 12.) It views the Third Circuit's ruling as barring the Attorney General from enforcing § 19:34-45 against NJBA and, as a result, there is "little doubt that it works a material change in the legal relationship between NJBA and the Attorney General." (*Id.* at 14.) NJBA argues that this change was "judicially sanctioned" because it was the Third Circuit's ruling that now permits it to engage in political spending, rather than a "voluntary about-face by the Attorney General." (*Id.*) NJBA asserts that the Third Circuit's decision to award relief on statutory construction grounds rather than constitutional grounds does not defeat its prevailing party status. (*Id.* at 15.)

Defendant disagrees. It argues that NJBA did not prevail because (1) it did not obtain a judgment that materially altered the relationship between the parties, and (2) to the extent NJBA succeeded, it was solely on an issue raised sua sponte by the Third Circuit. (Opp'n Br. at 10–13.) Moreover, contends Defendant, the Circuit's holding regarding a sua sponte issue does not qualify as a judgment because it is a "mere favorable statement of the law in an appellate opinion [that] does not suffice to make a plaintiff a prevailing party." (*Id.* at 10) (citing *Hewitt v. Helms*, 482 U.S. 755, 763 (1987)).

In reply, Plaintiff distinguishes Defendant's cited cases and insists that Plaintiff is the prevailing party. (Reply Br. at 1.) In Plaintiff's view, the Third Circuit determined that § 19:34-45 does not prohibit trade associations of banks from engaging in political spending. (*Id.* at 2.) And "there is no doubt that a holding by the Third Circuit, in a precedential opinion, is 'judicially sanctioned.'" (*Id.* at 3.)

### 1.    Whether the Parties' Relationship was "Materially Altered"

As NJBA points out, prior to the suit, the Attorney General interpreted § 19:34-45 as applying to banking industry trade associations. (Moving Br. at 2–3, 13–14) (citing March 14, 2002 Letter from Attorney General to the Election Law Enforcement Commission). NJBA thus

6

faced a substantial threat of future enforcement under the statute if it sought to make political contributions. The Third Circuit rejected Defendant's position and concluded that the statute does not apply to banking industry trade associations. As noted above, the Third Circuit highlighted that its ruling "provide[s] complete relief. NJBA seeks to make independent expenditures and contributions; based on our reading of § 19:34-45, it may do so." (ECF No. 116-2 at 16.) The collateral estoppel effect of the Third Circuit's ruling is to bar the Attorney General from enforcing § 19:34-45 against NJBA. *See Montana v. United States*, 440 U.S. 147, 153 (1979) ("A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . .") (interior quotation marks omitted); *Koch v. Pechota*, 744 F. App'x 105, 111 (3d Cir. 2018) ("Under issue preclusion, sometimes referred to as collateral estoppel, once a court has actually and necessarily determined an issue, it is conclusive on subsequent suits involving a party to the prior litigation even if based on different causes of action.").[2] The Court therefore finds that the parties' legal relationship has indeed been materially altered.

---

[2] In *United States v. Mendoza*, 464 U.S. 154 (1984), the Supreme Court found that the federal government cannot be bound by *nonmutual* collateral estoppel. Although the Third Circuit does not appear to have reached this issue, at least two other courts of appeal have applied the same reasoning to free state governments from its effect as well. *State of Idaho Potato Comm'n v. G&T Terminal Packaging*, 425 F.3d 708, 714 (2005) ("*Mendoza's* rationale applies with equal force to [plaintiff's] attempt to assert nonmutual defensive collateral estoppel against IPC (a state agency)."); *Hercules Carriers, Inc. v. Claimant State of Fla.*, 768 F.2d 1558, 1578–79 (11th Cir. 1985) (applying *Mendoza* to hold that nonmutual defensive collateral estoppel did not operate against a state government). Insofar as the prevailing party inquiry applicable to § 1988 focuses on the change of position between the actual parties to the suit, the Court finds that it does not need to consider whether and to what extent the New Jersey Attorney General might be bound by the Third Circuit's decision should it seek to enforce § 19:34-45 against another similar entity.

### 2.     Whether the Change in the Parties' Relationship was "Judicially Sanctioned"

The Court further finds that this change in the parties' relationship was "judicially sanctioned." As NJBA points out, its relief was provided by the Third Circuit's holding, not by some voluntary action by Defendant. Defendant does not dispute this point in his opposition. Accordingly, the Court finds that the change in the parties' relationship was judicially sanctioned.

### 3.     Defendant's Contrary Arguments are Unavailing

Defendant cites the Supreme Court's decision in *Hewitt v. Helms* and language to the effect that "a favorable judicial statement of law in the course of litigation that results in judgment against the plaintiff does not suffice to render him a 'prevailing party.'" *Hewitt* is, however, readily distinguishable.

In *Hewitt*, a district court had dismissed a plaintiff's claim against prison officials on the ground that his constitutional rights had not been violated. *Hewitt*, 482 U.S. at 757–58. The Third Circuit reversed, finding that the plaintiff's rights had indeed been violated, and remanded, directing the district court to enter judgment for the plaintiff unless it found that the defendant officials could establish an immunity defense. *Id.* at 758. The district court found that the officials were indeed immune and granted them summary judgment. *Id.* The Supreme Court ultimately held that the plaintiff was not a "prevailing party" because as a result of the remand order, the plaintiff "obtained nothing from the defendants. Id. at 761–2. The only 'relief' he received was the moral satisfaction of knowing that a federal court concluded that his rights had been violated." *Hewitt*, 482 U.S. at 761–62. Despite the remand order, the Court concluded, a "favorable judicial statement of law in the course of litigation that results in judgment against the plaintiff does not suffice to render him a 'prevailing party.'" *Id.* at 763. But the plaintiff in *Hewitt* sought only money damages—injunctive and declaratory relief were not at issue in that case. *Id.* at 758.

8

Worse, by the time any decision was rendered, he had been released from prison on parole, meaning that the court of appeal's recognition that his civil rights had been violated afforded him no relief beyond the moral satisfaction. Here, NJBA sought *only* declaratory relief and, in substance, it obtained it. Moreover, the relief it obtained is not moot as it was in *Hewitt*. It has value and effect. It is true that, as a purely procedural matter, its claims were ultimately dismissed, but it won the right to make political contributions. Most tellingly, the Third Circuit itself explicitly characterized its holding as "complete relief" for NJBA insofar as NJBA sought "to make independent expenditures and contributions; based on our reading of § 19:34-45, it may do so." (ECF No. 116-2 at 16.)

Finally, Defendant separately argues that because the Third Circuit decided the appeal on an issue it raised sua sponte rather than one presented by NJBA, NJBA does not qualify as a prevailing party. Defendant provides no authority for this proposition, however, and as NJBA points out on reply, at least one court in this circuit has found to the contrary. *See Doe v. Ward*, 282 F. Supp. 2d 323, 338 (W.D. Pa. 2003) (refusing to reduce fee award for plaintiff who challenged Megan's Law based solely on constitutional grounds but later prevailed on state law issue raised sua sponte by the district court rather than on constitutional issue). Accordingly, the Court rejects Defendant's argument.

For the reasons set forth above, the Court concludes that NJBA is a prevailing party within the meaning of § 1988.

**B.     Lodestar Calculation**

To determine a reasonable fee award, the Court first calculates the lodestar amount by multiplying the number of hours reasonably expended on the litigation by reasonable hourly rates for the billing attorneys. *Hensley*, 461 U.S. at 434.

### 1.     Reasonableness of the Attorneys' Hourly Rates

Reasonable hourly rates are determined according to the prevailing market rates of attorneys in the relevant community with similar skill and experience. *See Roccisano v. Twp. of Franklin*, Civ. No. 11–6558, 2015 WL 3649149, at *4 (D.N.J. June 11, 2015) (citing *Dee v. Borough of Dunmore*, 548 F. App'x 58, 62 (3d Cir. 2013)). Plaintiff seeks legal fees incurred by attorneys from Cadwalader, Wickersham & Taft LLP, Gibbons P.C., and Williams & Connolly LLP at the following hourly rates: $750 for directors with over thirty years of experience, $580 for partners with 18 years of experience, $500 for a director with 11 years of experience, $410 for various associates with a range of four to nine years of experience, and $325 for an associate with five years of experience. Plaintiff voluntarily reduced its fee application by seeking compensation at rates that were applied and approved by the Court in a 2021 fee application on another case in this district (the "AFP Rates") rather than the higher hourly rates that its attorneys typically charge for comparable work. (Moving Br. at 17–18.) Defendant does not dispute the reasonableness of these hourly rates. Having reviewed the attorney rates, the Court finds that they are reasonable and will use them to calculate the lodestar.[3]

### 2.     Reasonableness of the Number of Hours Billed

Unlike their hourly rates, the number of attorney hours sought by Plaintiff's counsel are very much in dispute. The Court has discretion to reduce the number of compensable hours in a fee application and may do so when it finds the hours expended were "excessive, redundant, or otherwise unnecessary." *See Roccisano*, 2015 WL 3649149, at *7 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990)). It may also reduce a fee award when billing entries are unreasonably duplicative or vague. *Id.*

---

[3] The Court additionally finds that the AFP hourly rates for Plaintiff's counsel's paralegals—$250 and $280—are reasonable.

Here, Defendant raises various objections to the number of hours billed by Cadwalader. Specifically, Defendant argues that Cadwalader's time entries are impermissibly vague and reflect overstaffing and excessive billable hours.[4] Defendant also contends that Cadwalader's time entries impermissibly use block billing. As to the latter, the Court disagrees. Block billing is a common practice in law firms and is an acceptable method of billing when the time entries are "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Roccisano*, 2015 WL 3649149, at *7. Upon a review of counsel's block billing entries, the Court finds that they are sufficiently specific to permit it to make the necessary assessment. The Court therefore does not reduce the number of hours on this basis.

The Court does, however, agree with Defendant that certain hours billed are excessive. For example, all of the Cadwalader attorneys staffed on the matter attended oral argument and billed for that time, but only one partner participated. These duplicative hours are not compensable. At large, the duplicative time entries reflect other overstaffing during this time period. Cadwalader's attorneys billed over 350 hours from June 2022 to August 2022 solely on drafting two, eight-page supplemental letter-briefs, and preparing for oral argument. The partner who spoke at oral argument billed over 60 hours preparing for the oral argument. Although the Court acknowledges the complexity of this case's underlying legal issues and respects counsel's level of preparation, some of the time billed for these tasks is excessive.

Based on the above analysis, the Court will deduct the following billed hours as unreasonably expended:

---

[4] Defendant does not object to any hours billed by the other law firms that represented Plaintiff.

| Task | Legal Research | Team Calls and Communications | Drafting and Revising Briefs | Oral Argument Preparation and Attendance | Administrative Time Entries | Total |
|------|------|------|------|------|------|------|
| Timekeeper | | | | | | |
| RR | 14 | 3.5 | 131.25 | 20 | | 168.75 |
| JW | | | | 6.5 | | 6.5 |
| WW | 31.1 | 7.3 | 17 | 1.1 | | 56.5 |
| WS | 14 | 13 | 24.6 | | | 51.6 |
| CB | | | | | 3 | 3 |

Accordingly, the Court finds the compensable hours for the above timekeepers as follows:

| Timekeeper | Claimed Hours | Hours Removed | Lodestar Hours |
|------|------|------|------|
| RR | 1331.15 | 168.75 | 1162.4 |
| JW | 116 | 6.5 | 109.5 |
| WW | 421.1 | 56.5 | 364.6 |
| WS | 607.44 | 51.6 | 555.84 |
| CB | 30.3 | 3 | 27.3 |

### 3.     Adjustment to the Lodestar

"[O]nce the lodestar amount is determined, it is within the discretion of the court to make adjustments to the lodestar." *D'Orazio v. Washington Twp.*, Civ. No. 07-5097, 2011 WL 6715635, at *9 (D.N.J. Oct. 18, 2011), *report and recommendation adopted in relevant part*, 2011 WL 6717427 (D.N.J. Dec. 21, 2011), *aff'd in relevant part, remanded in part*, 501 F. App'x 185 (3d Cir. 2012) (citing *Hensley*, 461 U.S. at 434). "The court may adjust the lodestar downward where a plaintiff, although a prevailing party, achieves only limited success."[5] *Id.* "In cases where there

---

[5] In *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, the Third Circuit highlighted twelve potential considerations, including "results obtained," that were identified by the Supreme Court in *Hensley*: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 195 F. App'x 93, 96 n.2 (3d Cir. 2006) (citing *Hensley*, 461 U.S. at 429–30 n.3).

are different claims based upon different facts and theories, an attorney's work on one claim may be distinct from another claim, therefore, fees on any unsuccessful claims should not be awarded." *Id.* "Conversely, in cases where plaintiff's claims involve 'a common core of facts' or related legal theories, it will be more difficult to divide the time expended, thus, in determining whether to downwardly reduce fees, the court 'should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *Id.*

Here, Defendant seeks to divide the case between Plaintiff's constitutional claims and the state-law issue raised by the Third Circuit that ultimately proved successful. (Opp'n Br. at 16–19.) Defendant concedes that Plaintiff is entitled to the hours its attorneys spent addressing the Circuit's question regarding the applicability of § 19:34-45 to a banking trade association. In Defendant's view, however, this smaller and less-billed issue does not share a common core of facts or legal theories with Plaintiff's constitutional claims that would justify crediting attorney time spent on the constitutional issues to the state-law issue for the purposes of a fee shift. (*Id.*)

The Court rejects Defendant's attempt to re-frame Plaintiff's victory. As the Court has already found, Plaintiff obtained complete relief as to Count 1 of its Complaint. That the Third Circuit exercised its discretion to avoid the First Amendment issue does not diminish Plaintiff's status as a prevailing party on that claim, nor does it warrant diminishing its fees. The same restriction was at play (a state statute barring political contributions by NJBA) and the same relief was obtained (NJBA's freedom to make those political contributions). *Fross v. Cnty of Allegheny*, 848 F. Supp. 2d 547, 554–56 (W.D. Pa. 2012) (awarding fees without reduction because the statutory interpretation issue raised sua sponte was not "entirely unrelated" to the unadjudicated constitutional claim).

Still, Plaintiff's success was less than complete. "There are two primary measures used by courts to determine whether a plaintiff's success was limited." *Roccisano*, 2015 WL 3649149, at *19. "The first measure is the amount of damages received." *Id.* "The second measure of success is whether some of the claims or one or more defendants were dismissed from the case." *Id.* The first measure does not apply to this case because it never sought damages, but the second measure does. As to the second measure, Plaintiff's second claim sought freedom for individual banks to make political contributions in New Jersey. It did not succeed in any way on this claim. The Third Circuit held that NJBA lacked standing to raise that challenge, and ordered Count 2 dismissed without the same favorable determination that the Third Circuit bestowed on Count 1. Plaintiff's suit therefore concluded with N.J.S.A. § 19:34-45 continuing to bar individual banks from making political contributions in this state. Although banks in New Jersey may engage in political contributions, they may only do so collectively through NJBA. Nevertheless, the Court finds that Counts 1 and 2 were interrelated insofar as they shared common facts and common legal theories. Accordingly, when comparing the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," *Hensley*, 461 U.S. at 435, the Court finds that the lodestar amount of fees does merit a reduction. On the basis of the record before it, the Court finds that a fee reduction of 30% is appropriate. The total amount of fees will therefore be reduced to $1,111,024.25.

**C.    Plaintiff's Costs for the Case in Chief**

Under § 1988, Courts have "authority to award 'reasonable out-of-pocket expenses . . . normally charged to a fee-paying client, in the course of providing legal services.'" *Planned Parenthood of Cent. N.J. v. Att'y Gen. of State of N.J.*, 297 F.3d 253, 267 (3d Cir. 2002) (quoting *Associated Builders & Contractors of La., Inc. v. The Orleans Par. Sch. Bd.*, 919 F.2d 374, 380

(5th Cir. 1990)).  NJBA seeks $68,110.87 in costs.  (Moving Br. at 31–32.)  Defendant does not object to these costs.  Accordingly, Defendant will be Ordered to pay $68,110.87 in costs.

### D.      Fees and Costs Incurred in Preparation of NJBA's Fee Application

"Generally, under . . . 42 U.S.C. § 1988, fees for preparing a motion requesting costs and fees, or 'fees on fees,' are recoverable."  *See Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3d Cir. 1998) (citation omitted).  "Fee petition litigation should be treated as a separate entity subject to lodestar and *Hensley* reduction analysis."  *Rode*, 892 F.2d at 1192 (interior quotation marks omitted).

NJBA seeks $164,016.00 in fees and $34,563.60 costs for the preparation of its fee application.  (Reply Br. at 14.)  Defendant raises no objections to these fees and costs.[6] Accordingly, the Court makes no corresponding lodestar reductions to fees or costs.  Consistent with *Henley*, however, the Court reduces NJBA's attorney's fees for its fee application by the success of the fee application itself: 30%.  Defendant will therefore be ordered to pay $106,610.40 in fees and $34,563.60 in costs for NJBA's preparation of its fee application.

---

[6] NJBA advised Defendant in its Moving Brief that it would be seeking fees and costs for its fee application with its Reply.  (Moving Br. at 18 n.3; Rodman Declaration ¶ 36, ECF No. 124-2.)  Defendant raised no objections in its Opposition, nor did it seek leave to file a sur-reply to address NJBA's application for fees and costs associated with preparing its fee application.

V.     **CONCLUSION**

For the reasons stated above, the Court will GRANT IN PART and DENY IN PART

Plaintiff's Motion for Attorney's Fees. (ECF No. 124.)  An appropriate Order will follow.


Date: **August 31, 2023**

**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

16